456 A.2d 1348

PARTRICK & WILKINS CO., a Pa. Corp., and Partrick & Wilkins Co., as Cestui que trust of Wyman C. Scott, Real Owner and John Adams & Jettie L. Adams, Registered Owners of premises 5100 Lancaster Avenue, Philadelphia, Pa., & Duby Corporation, a Pa. Corp., as Assignee of Partrick & Wilkins Co., Appellants,

v.

RELIANCE INSURANCE CO., Providence-Washington Ins. Co., General Accident Ins. Co., Wyman C. Scott, Real Owner, and John Adams & Jettie L. Adams, as Registered Owners of premises 5100 Lancaster Ave., Philadelphia, Pa.

and

Ben Weinstein.

Supreme Court of Pennsylvania.

Argued Jan. 24, 1983.

Decided March 11, 1983.

400

Andrew F. Mimnaugh, Philadelphia, for appellants.

Harry P. Begier, Philadelphia, for Reliance Ins. Co.

M. Stuart Goldin, Philadelphia, for Weinstein.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION OF THE COURT

ROBERTS, Chief Justice.

This is an appeal from an order of the Superior Court affirming judgment of the Court of Common Pleas of Philadelphia against appellant Partrick & Wilkins Co., the vendee under a land sale contract, and in favor of appellees, the vendors and their insurance companies. Following destruction of the premises by fire prior to settlement, suit was brought by appellant to collect the difference between the estimate of the fire losses arrived at by the appellant's adjuster and the estimate computed by the adjuster for the vendors. In entering judgment against appellant, the court of common pleas rejected appellant's theory that appellant's status as equitable owner of the property under the contract of sale required the vendors to use appellant's more favorable estimate of loss when filing a proof of loss statement with the vendors' insurers. We agree and hence affirm.

### I

In 1967, appellant entered into a written contract for the purchase of a tract of land in Philadelphia owned by appellees John and Jettie Adams. Settlement was to occur on March 16, 1970, but was postponed when a dispute arose between the vendors and appellant. That dispute led to

legal action by appellant which resulted in the entry of a decree of specific performance by the Court of Common Pleas of Philadelphia in favor of appellant. The decree was affirmed by this Court on appeal. *Partrick and Wilkins Co. v. Adams,* 471 Pa. 63, 369 A.2d 1195 (1977).

Subsequent to the date of the agreement of sale but prior to our affirmance of the decree of specific performance, two fires occurred on the premises, causing considerable damage to the building and its contents. At the time of the fires, both appellant and the vendors had fire insurance covering the premises: Appellant's insurance provided coverage in the amount of $130,000 for the building and contents; the vendors' insurance provided coverage in the amount of $75,-000 for the building only.[1]

The liability of the insurance companies was prorated by agreement of the parties. Although appellant did not attempt to secure an assignment of the claim of the vendors against their insurers for the proceeds of the policies, appellant did notify the vendors that it intended to assert a claim to the proceeds and that it had retained an adjuster who had estimated the amount of loss from both fires to be $116,-802.80. Meanwhile, the vendors had retained their own adjuster, appellee Ben Weinstein, who, along with the adjuster hired by the insurance companies, estimated the amount of both losses to be $78,564.58. This latter figure was used by the vendors in their proofs of loss.

Appellant filed suit in the Court of Common Pleas of Philadelphia, claiming, as it claims now, that, because the vendor under a land sale contract holds the proceeds of its own insurance as trustee for the vendee pursuant to the doctrine of equitable conversion, the vendors were obliged to use appellant's higher estimate of loss in settling the claims with their insurers. Appellant sought damages in the

1. Appellant's coverage was provided under four separate policies issued by different companies: Aetna ($26,000), Firemen's Fund ($39,000), Maryland ($39,000), and Reliance ($26,000). The vendors were covered under three policies, also issued by different companies: General Accident ($37,500), Provident ($17,500), and Reliance ($20,000).

amount of $116,802.80, the amount of the estimate of loss computed by its own adjuster.

Following the commencement of the action, the vendors' insurers, who had been named as co-defendants, tendered checks totalling $70,708.20 to appellant, the sum representing the appraisal figure determined by the vendors' adjuster less the amount owed to that adjuster for his services.[2] Appellant agreed to accept the payment, but expressly reserved the right to pursue his claim for $38,238.22, the difference between the appraisal figure computed by appellant's adjuster and the total of the amounts received by appellant and owed to the vendors' adjuster.

Not having received his adjuster's fees from the defendant insurance companies, appellee Weinstein petitioned and was permitted to intervene as a plaintiff. After a hearing, the court of common pleas rejected appellant's claimed entitlement to additional damages and awarded the vendors' adjuster his full fee.[3] The Superior Court affirmed, stating that, although "appellant may assert a claim against the vendors for any excess [the vendors] have recovered over and above the balance of the unpaid purchase money," appellant could not "interfere in any way with the claims the vendors may have on the policies." We granted allowance of appeal.

## II

■ Under the doctrine of equitable conversion, a contract for the sale of real estate transfers equitable title to the vendee, who bears the risk of any harm to the property, other than that caused by the vendor, which occurs between the execution of the contract and final settlement. Because the vendee must pay the full contract price whatever the condition of the property, our case law has long held that,

---

2. Although the record is unclear, it appears that approximately $40,000 of this payment may have been retained by the vendors in satisfaction of the outstanding balance of the purchase price.

3. In its appeal, appellants have not challenged the trial court's award of adjuster fees.

although a vendor is legally entitled to recover the proceeds of his insurance policy if the property is destroyed, the vendor's equitable entitlement to the proceeds extends only to the unpaid balance of the purchase price; any excess is deemed to be held "in trust" for the vendee. See, e.g., *Dubin Paper Co. v. Insurance Co. of North America,* 361 Pa. 68, 63 A.2d 85, 89 (1949); *Insurance Co. v. Updegraff,* 21 Pa. 513 (1853).

Appellant seizes upon the "trust" concept expressed in our cases to argue that, once property has been damaged, a vendor is obliged in his dealings with its insurance company to press for settlement of its claim on terms most favorable to the vendee, the beneficiary of the "trust." However, this argument misperceives the scope of the vendor's obligations. Because a vendor would obviously be unjustly enriched if it were permitted to retain both the full contract price and indemnification of a loss which must be borne by the vendee, our courts have imposed a constructive trust upon the vendor's insurance proceeds. As this Court has often stated, a constructive trust is not a trust in the ordinary sense of the term but simply an equitable remedy designed to prevent unjust enrichment. See, e.g., *Buchanan v. Brentwood Fed. Sav. & Loan Ass'n,* 457 Pa. 135, 151, 320 A.2d 117, 126 (1974); *Pierro v. Pierro,* 438 Pa. 119, 127, 264 A.2d 692, 696 (1970); Restatement of Restitution § 160 (1937). Unlike the duties of a traditional fiduciary, "the sole responsibility of a constructive trustee is to surrender the property to the one on whose behalf the constructive trust is raised." *Buchanan,* supra, 457 Pa. at 152, 320 A.2d at 127.

Thus, once the vendors obtained possession of the insurance proceeds, they became obliged as constructive trustees to disgorge any unjust enrichment by transferring to appellant all proceeds in excess of the outstanding balance of the contract price. However, prior to that time, the vendors were in no respect unjustly enriched, nor did they become unjustly enriched by their conveyance to appellant of a sum less than that which appellant wished to receive. Indeed, if appellant's view were to prevail, the vendors,

having no further claim upon their insurance companies, would be required to pay over $38,000 to appellant from their own pocket, even though they have received nothing more than the contract price agreed upon by both parties to the sale.[4]

As the vendors fully discharged their obligation under the constructive trust by transferring the excess proceeds of their insurance to appellant, appellant's claim must be rejected.

Order of the Superior Court affirming the judgment of the Court of Common Pleas of Philadelphia is affirmed.

HUTCHINSON, J., concurs in the result.

---

4. Of course, nothing we say affects the vendee's right to bring suit to compel a vendor who has received the full contract price to submit a claim to its insurer for the proceeds of the vendor's policy. See *Dubin Paper Co. v. Insurance Co. of North America,* supra. So, too, our holding does not prevent a vendee from obtaining an assignment of the vendor's claim against its insurer for the policy proceeds and using its own estimate of loss in settling the assigned claim. Finally, the parties remain free to agree between themselves to submit the most favorable estimate of loss.